UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 03-836 (JAP) |
| v. | **OPINION** |
| WILLIAM BASKERVILLE | |

PISANO, District Judge.

**I. Introduction**

After several weeks of trial in this matter, the defendant, William Baskerville, ("Defendant") was convicted of various drug-related offenses and two capital murder conspiracy charges. Under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 *et seq.*, once a determination of guilt has been made with respect to offenses punishable by death, the trial continues to a second phase, the "penalty phase," in which the jury[1] determines the defendant's sentence for those offenses. During this second phase, a jury must first determine whether a defendant is death-penalty eligible, and, if so, the jury then weighs any aggravating and mitigating circumstances to arrive at a sentence.

In the present case, relevant to the determination of whether Defendant was death-penalty eligible were certain "special findings" set forth in the Notice of Special Findings

---

[1] Under the FDPA, the penalty phase can also be tried before the court alone upon motion by the defendant and with approval of the prosecution. 18 U.S.C. § 3593(b). The penalty phase in this case proceeded before the jury.

("Notice") in the Fourth Superseding Indictment ("Indictment"). After the jury returned its guilty verdicts on the capital charges but before the penalty phase in this case commenced, a motion was made by Defendant to strike one of the enumerated special findings from the Notice in the Indictment as not being supported by the evidence presented in this case.[2] Oral argument was held on May 2, 2007, and the Court issued a ruling from the bench on May 4, 2007, granting Defendant's motion. This opinion supplements the Court's oral opinion and further sets forth the reasoning of May 4th ruling.

## II. Background

On June 29, 2006, a Fourth Superseding Indictment was filed charging defendant with conspiracy to murder a witness, conspiracy to retaliate against an informant and several non-capital drug crimes. The two murder conspiracy charges related to the murder of Kemo McCray, a confidential witness who, as stated in the Indictment, purchased illegal drugs from the Defendant "under the supervision and surveillance of Federal law enforcement agents." Indictment at 1-2. After Defendant's arrest on charges stemming from these drug transactions, the government alleged that Defendant was able to ascertain the identity of the confidential witness. According to the prosecution, Defendant "informed co-conspirators that the identity of the 'confidential witness' was [Kemo McCray] and told co-conspirators to kill

---

[2]Defendant states his application is "akin to a Rule 29 application." Rule 29, among other things, permits a defendant to move for acquittal at the close of the government's evidence, and a court may enter a judgment of acquittal for any offense "for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. Although the rule does not expressly address the instant situation involving special findings relevant to the penalty phase of a capital case, Defendant's motion is based on his assertion that the evidence presented in this case is insufficient to support the special finding set forth in the indictment. The Court, therefore, finds that Rule 29 is the most appropriate procedural vehicle for addressing Defendant's motion.

[him]."  Indictment at 3.

According to testimony at trial, on March 2, 2004, McCray was approached on a city street by Anthony Young,[3] a long-time friend of the Defendant.  Young testified that as McRay was walking with another individual, Young approached McCray and shot him several times, killing him.  Defendant, who had been in federal custody since his arrest on drug charges in November 2003, was in jail at the time McRay was murdered.

The first two counts in the Indictment against Defendant alleged that Defendant participated in a conspiracy to murder McCray for the purpose of (1) retaliating against McCray for providing information to law enforcement; and (2) preventing McCray from testifying against Defendant on the drug charges.  Indictment at 4, 6.  These two offenses can be punishable by death, and the government sought the death penalty against Defendant with respect to each of the capital counts.  *See* Notice of Intent to Seek the Death Penalty filed June 16, 2006.  On May 1, 2007, a jury returned guilty verdicts against Defendant on all charges.

### III. Discussion

As noted previously, under the FDPA, in cases where a conviction is obtained for a death-eligible offense, the trial proceeds to a second phase after the determination of guilt has been rendered.  This second phase is generally known as the "penalty phase" of a capital case.  The initial step of the penalty phase[4] involves a jury making certain findings in order to

---

[3]Young has confessed to the killing and entered into a plea agreement with the government.  As of the date of this Opinion, he awaits sentencing.

[4]In the instant case, the Court conducted the penalty phase in two stages.  During the first stage, or the "eligibility stage," the jury made findings with respect to whether Defendant was death-penalty eligible.  Upon finding that Defendant was death penalty eligible, the penalty phase then proceeded to a second stage, or the "penalty selection" stage, during which the jury weighed

determine whether a defendant is death-penalty eligible. 18 U.S.C. 3593(b). In this regard, as relevant to the present motion, the government first must establish beyond a reasonable doubt that a defendant had the requisite mental state; that is, the government must show that the defendant met at least one of four statutory intent factors, known as "gateway" factors. These factors require the jury to unanimously find that the defendant:

> (A) intentionally killed the victim;
>
> (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
>
> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
>
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

18 U.S.C. § 3591(a)(2).[5]

Next, the government must prove the existence of at least one statutory aggravating factor enumerated in § 3592(c). If at least one gateway and one statutory aggravating factor are established, the defendant is considered death-penalty eligible, and the jury may then weigh the existence of any aggravating factors against any mitigating factors in order to arrive at a recommended sentence. 18 U.S.C. § 3593(e).

---

any aggravating and any mitigating factors in order to arrive at a sentencing recommendation.

[5]Only the last two of these factors, *i.e.*, those listed in subsections (C) and (D), are relevant to the present matter. The government did not request that the jury be instructed with respect to the factors listed in subsections (A) and (B).

The instant motion relates to the "gateway" intent factors enumerated in 18 U.S.C. § 3591(a)(2)(A)-(D) (the individual factors are referred to herein as, for example, "subsection (D)"). Defendant seeks to strike the special finding in the Indictment that relates to the gateway factor listed in subsection (D), arguing that no evidence was presented in this case showing that Defendant "intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act." *See* § 3591(a)(2)(D). In particular, Defendant asserts that there was no evidence that Defendant himself "specifically engaged in an act of violence." Consequently, the Defendant seeks to have the relevant special finding struck from the Indictment and for the jury to be instructed only as to subsection (C).

The government, on the other hand, argues that the gateway factors enumerated in both subsections (C) and (D) are applicable in this case. As to subsection (C), the government asserts that evidence was presented from which the jury could conclude that Defendant "pass[ed] on" information about McCray's identity with the intent that McCray be killed and that such an act fulfils the intent requirement set forth in subsection (C). *See* Transcript of Proceedings at 5998. As to subsection (D), the government asserts that evidence was introduced from which the jury could conclude that Defendant "order[ed] the hit" on McCray and that the act of "ordering the hit" constitutes an "act of violence" as contemplated by subsection (D). *See* Transcript of Proceedings at 5983.

A.  Focus Must Be On Defendant's Own Culpability

It is important to note at the outset that this is a conspiracy case. In the first phase of

5

the trial, the jury, by way of its guilty verdicts on Counts One and Two of the Indictment, found that the Defendant participated in a conspiracy to murder Kemo McCray.  By definition, a conspiracy has at least one other co-conspirator, and in this case there was testimony that several co-conspirators were involved.  Despite the involvement of others in the crime, however, in capital cases the Constitution requires that Defendant's punishment be "tailored to his *personal* responsibility and moral guilt." *Enmund v. Florida*, 458 U.S. 782, 801, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (emphasis added).  Thus, any sentence of death cannot be predicated upon the actions of any co-conspirators, but rather only upon the actions of Defendant himself.  *See Tison v. Arizona*, 481 U.S. 137, 149, 156-57, 107 S. Ct. 1676, 95 L. Ed.2d 127 (1987) (holding that "major participation" in a felony, combined with reckless indifference to human life, is sufficient to satisfy the culpability requirement for a sentence of death); *Enmund*, 458 U.S. at 798 ("the focus must be on [the defendant's] culpability, not on that of those who... [killed] the victims"); *Lockett v. Ohio*, 438 U.S. 586, 604-05, 98 S. Ct. 2954, 57 L. Ed.2d 973 (1978) (finding that the Constitution requires an individualized consideration regarding whether a sentence of death should be imposed).  As such, in addressing this motion, the Court is mindful that any evaluation of whether Defendant is death-penalty eligible must necessarily be based specifically upon Defendant's own conduct.  The Supreme Court's decisions in *Enmund v. Florida* and *Tison v. Arizona* underscore this requirement.

B.  *Enmund* and *Tison* Decisions

It is clear from the legislative history of the FDPA that the two statutory intent factors relevant to this motion, § 3591(a)(2)(C) and (D), were based upon the Supreme Court's

decisions in *Enmund* and *Tison*. *See* H.R. Rep. 103-466 (March 25, 1994) ("The intentional participation and 'reckless disregard for human life' standards stem from the Supreme Court's holdings in" *Enmund* and *Tison*.). The gateway factors are intended to meet the requirements set forth in *Enmund* and *Tison* for ensuring that a capital defendant has a sufficiently culpable mental state to be eligible for the death penalty.

In *Enmund*, the defendant was the driver of a "getaway" car for two others who robbed and murdered an elderly couple in the couple's home. Based solely on his participation in aiding and abetting the robbery, Enmund was convicted of first-degree murder and sentenced to death. 458 U.S. at 785. The Supreme Court reversed the death sentence, holding that the Eighth Amendment prohibits imposing the death penalty on a defendant "who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *Id.* at 797.

In *Tison* the Court further clarified its holding in *Enmund*. *Tison* similarly involved the issue of the constitutionality of a death sentence imposed on defendants -- two brothers -- convicted of felony murder but who did not themselves kill the victims. 481 U.S. at 139-41. *Tison* involved a prison escape in which the two defendant brothers entered a prison while heavily armed and helped their father and another inmate escape. *Id.* at 139. After leaving the prison, the group's car broke down as they were traveling through back roads and secondary highways in the Arizona desert. *Id.* They flagged down a passing car containing a mother and father, their two-year old son, and a fifteen-year old niece. *Id.* at 140. After kidnaping the family and taking control of their car, the group drove out further into the desert where the

two escaped inmates murdered the family. *Id.* at 141. The Court found that *Enmund* would not necessarily preclude imposition of the death penalty under the circumstances presented, holding that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." *Id.* at 158.

Both *Enmund* and *Tison* involved defendants convicted under state felony-murder rules. As with felony murder, a co-conspirator in a murder conspiracy who did not himself commit the killing may be criminally liable for the actions of others. However, as case law makes clear, mere participation in a felony murder -- or, it logically follows, mere participation in a murder conspiracy -- while sufficient to support criminal liability, is not alone sufficient to qualify a defendant for a sentence of death. Rather, it is Defendant's role in the conspiracy, his personal culpability, that must be examined in determining whether Defendant may be subject to the death penalty.

C.  The Evidence In This Case Cannot Satisfy Subsection (D)

Given this backdrop with respect to the relevant statutory provisions, the Court now turns to the specific gateway factors. The Defendant does not appear to dispute that evidence has been presented in this case from which the jury could conclude that Defendant "passed on" McCray's name to others with the intent that McCray be killed, nor does he dispute that the jury may conclude that Defendant "ordered the hit" on McCray. Rather, Defendant asserts that such actions do not satisfy the gateway intent factor set forth in § 3591(a)(2)(D). The issue turns primarily upon the meaning of the phrase "intentionally and specifically engaged in an act of violence" in subsection (D), and whether that phrase encompasses the act of

"ordering a hit."

Applying the relevant rules of statutory interpretation, the Court first looks to the plain language of the statute. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Notably, there is a key difference between subsections (C) and (D) which bears upon the interpretation of subsection (D). The threshold requirement in subsection (C) is that a defendant must have intentionally "participated in an act." However, the threshold requirement in subsection (D) is that a defendant must have intentionally and "specifically engaged in an act of violence." Thus, Congress expressly narrowed subsection (D) to acts of a particular quality, namely, violent acts.

The term "act of violence" is not expressly defined in § 3591. One court, however, has addressed the issue. In an unpublished decision, *United States v. Williams*, 2006 WL 2850063 (S.D. Tex. 2006), the government moved *in limine* requesting the court to define "act of violence" in § 3591. The government presented the court with two potential definitions, and the court accepted the following definition: "An act, that by its nature, creates a grave risk of serious injury to a person or grave risk of death to a person." The Court finds that this definition, however, is not entirely complete.

A basic principle of statutory construction provides that where words in a statute are not defined, they must be given their ordinary meaning. *Smith v. United States*, 508 U.S. 223, 228, 113 S. Ct. 2050, 2054, 124 L. Ed.2d 138 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."). As defined by the Merriam-Webster Dictionary, "violence" is the "exertion of physical force so as to injure or abuse." Black's Law Dictionary (8th ed. 2004) defines "violence" as the "use of physical

9

force, [usually] accompanied by fury, vehemence, or outrage." Similarly, the federal criminal code defines a "crime of violence" in terms of "physical force." *See* 18 U.S.C. § 16.[6] At the center of all of these definitions is the use of physical force. Therefore, given its ordinary meaning, an "act of violence" would be an act that involves the use physical force.

Further, for a defendant to be found to have the requisite intent under subsection (D), it must be shown that he "specifically engaged" in an act of violence. Again, a comparison of subsection (D) to subsection (C) is helpful with regard to this term. Subsection (C) requires that a defendant have "participated" in the requisite act. In subsection (D), however, mere participation is not sufficient. In drafting subsection (D), Congress again chose to narrow subsection (D) by making it applicable only to those defendants who have "specifically engaged" in the requisite act.

Giving the relevant terms their ordinary meaning, it cannot be said that a reasonable jury could conclude from the evidence presented in this case that Defendant "specifically

---

[6] 18 U.S.C. § 16 defines a "crime of violence" as

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

It is important to note that in the context of the present case, a distinction must be made between an "offense" as used in § 16 and an "act" as used in § 3591. Significantly, in § 3591, the term "offense" is clearly distinguished from the term "act." Because "offense" can be more broadly construed than "act," the term "crime of violence," as defined in § 16, would likely have a broader application than the term "act of violence" in § 3591. Indeed, Congress could have used the defined term "crime of violence" instead of "act of violence" in § 3591 but chose not to, indicating that § 3591(a)(2)(D) should apply only in more narrowly defined circumstances.

engaged in an act of violence." Even if the jury concludes that Defendant ordered that McCray be killed, Defendant's act itself lacks the element of physical force contemplated by subsection (D). And to the extent that McCray's murder constituted an act of violence, Defendant, being in jail at the time of the killing, did not "specifically engage" in that act. Consequently, the evidence presented in this case is insufficient to satisfy subsection (D), and Defendant's motion to strike shall be granted.

The Court notes that its decision does not preclude a jury from finding Defendant, or any other defendant found to have directed another person to commit a murder, death-penalty eligible. To the extent the jury may find that Defendant directed that McCray be killed, such an act would be encompassed by the statutory language in subsection (C) which requires a defendant to have "participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person." Thus, both factual scenarios presented by the government on this motion may still qualify the Defendant for a death sentence.

## IV.  Conclusion

For the reasons stated above, Defendant's motion is granted, and the special finding in the Notice of Special Findings in the Indictment that is based on § 3591(a)(2)(D) is stricken.

/s/ JOEL A. PISANO
United States District Judge

Date: June 6, 2007